UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CASE NO.:  3:26-cv-503

**JURY TRIAL DEMANDED**

DANIEL JOHN GILROY,

       Plaintiff,

vs.

BILL LEEPER, in his official capacity as
Sheriff of Nassau County,
ROBERT JACKSON,
BRANDON L SCHMIDT,
CITY OF JACKSONVILLE, and
JACKSONVILLE ELECTRIC AUTHORITY.

       Defendants.

_____/

## COMPLAINT

Plaintiff, DANIEL JOHN GILROY sues Defendants, BILL LEEPER, in his official capacity as Sheriff of Nassau County, ROBERT JACKSON, BRANDON L SCHMIDT, CITY OF JACKSONVILLE, and JACKSONVILLE ELECTRIC AUTHORITY, and alleges:

### I.    JURISDICTION AND VENUE

1.    This is an action for damages that exceed $75,000.00, exclusive of interest, costs, and attorney's fees.

1

2.    This action is brought pursuant to Fla. Stat. § 768.28.

3.    This court has jurisdiction over any violations of 42 U.S.C. § 1983, and the common law claims for battery, wrongful arrest, and false imprisonment.

4.    Venue is properly located in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b) because, (1) the Defendants are located in this district, and (2) Defendants conduct business within this judicial district, and or (3) all of the events or omissions giving rise to Plaintiff's claims occurred and are occurring within this district.

5.    Defendant, BILL LEEPER, in his official capacity as Sheriff of Nassau County, was properly noticed of these claims pursuant to the requirements of Fla. Stat. § 768.28, including notice to the Florida Department of Financial Services, as required by said statute.  More than six months have passed from the date of filing of such notices and the Defendant has not made final disposition of the claims.

6.    Defendant, CITY OF JACKSONVILLE was properly noticed of these claims pursuant to the requirements of Fla. Stat. § 768.28 and Jacksonville Municipal Code §112.203 and §112.205, including notice to the Florida Department of Financial Services, as required by said statute.  More than six

2

months have passed from the date of filing of such notices and the Defendant has not made final disposition of the claims.

7.     Defendant, JACKSONVILLE ELECTRIC AUTHORITY was properly noticed of these claims pursuant to the requirements of Fla. Stat. § 768.28 and Jacksonville Municipal Code §112.203 and §112.205, including notice to the Florida Department of Financial Services, as required by said statute.  More than six months have passed from the date of filing of such notices and the Defendant has not made final disposition of the claims.

## II.    PARTIES

8.     At all times material hereto, Plaintiff, DANIEL JOHN GILROY ("Plaintiff") was over the age of 18 and a resident of Florida.

9.     Defendant, BILL LEEPER, in his official capacity as Sheriff of Nassau County ("NCSO"), is the duly elected law enforcement officer and head of the Nassau County Sheriff's Office, an agency that resides within the confines of Nassau County, Florida.

10.     Defendant, CITY OF JACKSONVILLE ("COJ") is a political subdivision of the State of Florida, with authority to sue and to be sued, and is located in Duval County, Florida, with its principal place of operation located at 117 West Duval Street, Jacksonville, Florida.  The Jacksonville Sheriff's Office

(hereinafter "JSO") is the local government law enforcement agency of Defendant CITY OF JACKSONVILLE responsible for public safety within Duval County, Florida.

11.     Defendant, JACKSONVILLE ELECTRIC AUTHORITY ("JEA") is a municipally-owned not-for-profit utility company of the City of Jacksonville, organized and existing under the laws of the State of Florida, with its principal place of business located at 225 North Pearl Street, Jacksonville, Florida.

12.     Defendant, Deputy ROBERT JACKSON ("JACKSON") was at all times material employed as a sworn law enforcement officer of the Nassau County Sheriff's Office.

13.     Defendant, Sergeant BRANDON L SCHMIDT ("SCHMIDT") was at all times material employed as a sworn law enforcement officer of the Nassau County Sheriff's Office.

## III.   STATEMENT OF FACTS

14.     On March 19, 2024, Plaintiff was parked as depicted in the photo below on Tract H of the property owned by HIDEAWAY HOMEOWNERS ASSOC INC. as shown by  Exhibit A.



15.    Plaintiff was not parked on Tract D, the JEA Pump station as shown by Exhibit B.

16.    Plaintiff did not trespass on the premises of the JEA Pump station.

17.    At no time did Plaintiff enter the area fenced in as Tract D that had a no trespassing notice.

18.    Plaintiff was engaged in his lawful employment as a Florida-licensed private investigator.

19.    Defendant JACKSON was dispatched to 86618 Lazy Lake Cir., in reference to a suspicious vehicle call. The caller advised there was a maroon

vehicle sitting in front of her property on the JEA easement. The caller further advised the vehicle has been there for several hours, running, and the windows appeared to be covered as if to conceal the occupants and/or activities within the vehicle

20. Defendant JACKSON arrived to the vicinity at approximately 12:35pm. and knocked on Plaintiff's back left car window.

21. Plaintiff rolled the window down approximately 2 inches and the following exchange occurred:

| *Defendant JACKSON* | *Plaintiff* |
|---|---|
| Hey there how are you? | |
| | Good afternoon deputy. |
| Good can you roll the window down all the way so I can see you? | |
| | Are you making a traffic stop sir? |
| Yes sir I'm stopping you because we've got a report of a suspicious vehicle. | |
| | Alright so your stopping me so I'm not free to go? |
| No sir you are detained so ill let you in on that secret if that is the question you are asking. | |
| | Ok |

6

| | |
|---|---|
| Right now your just being detained while I investigate while you're out here, are you a private investigator or anything sir? | |
| | Sir I don't believe you have the right to detain me. |
| OK do you live in this neighborhood sir? | |

22.    Plaintiff then rolled the window up.

23.    It cannot be doubted that "a refusal to cooperate [with a police request to conduct a voluntary search], without more, does not furnish the minimal level of objective justification needed for a detention or seizure." *Florida v. Bostick*, 501 U.S. 429, 437 (1991).

24.    American citizens such as Plaintiff cannot be compelled to speak with the police.  U.S. Const. amends. I and V; *see also Ohio v. Reiner*, 532 U.S. 17, 21 (2001)("we have emphasized that one of the Fifth Amendment's "basic functions . . . is to protect innocent men . . . `who otherwise might be ensnared by ambiguous circumstances.' " *Grunewald v. United States*, 353 U. S. 391, 421 (1957) (*quoting Slochower v. Board of Higher Ed. of New York City*, 350 U. S. 551, 557-558 (1956)) (emphasis in original).")

25.    Plaintiff had not committed a crime.

7

26.    Defendant JACKSON then made a call over the radio: "701 step it up 77 this time subject's in the vehicle refusing to identify himself."

27.    Defendant JACKSON proceeded to summon a gang of NCSO deputies to the scene. (collectively "Deputies").

28.    Defendant JACKSON knocked on Plaintiff's back left car window again.

29.    Defendant JACKSON was unable to articulate his reasonable articulable suspicion for detaining Plaintiff.

30.    Defendant JACKSON detained Plaintiff because in his words "we've got a report of a suspicious vehicle."

31.    Defendant JACKSON proceeded to attempt to manufacture a basis for detaining Plaintiff by claiming that Plaintiff was loitering and prowling even though Plaintiff was parked on Tract H of the property owned by HIDEAWAY HOMEOWNERS ASSOC INC., in a car with tinted windows, in the afternoon on a clear and sunny day.

32.    Defendant JACKSON proceeded to attempt to manufacture a basis for detaining Plaintiff by claiming be was trespassing on JEA property because a no trespassing sign was visible from where Plaintiff was parked on Tract H of the property owned by HIDEAWAY HOMEOWNERS ASSOC INC.

8

33.    Officers "may briefly detain a person as part of an investigatory stop if they have a reasonable articulable suspicion based on objective facts that the person has engaged in criminal activity." *United States v. Blackman*, 66 F.3d 1572, 1576 (11th Cir. 1995).

34.    Plaintiff being in a "suspicious vehicle" does not equate to reasonable articulable suspicion based on objective facts that the person has engaged in criminal activity.

35.    The Florida Legislature even states in Fla. Stat. 901.151(2), the "Florida Stop and Frisk Law":

(2)   Whenever any law enforcement officer of this state encounters any person under circumstances which reasonably indicate that such person has committed, is committing, or is about to commit a violation of the criminal laws of this state or the criminal ordinances of any municipality or county, the officer may temporarily detain such person for the purpose of ascertaining the identity of the person temporarily detained and the circumstances surrounding the person's presence abroad which led the officer to believe that the person had committed, was committing, or was about to commit a criminal offense.

(3)   No person shall be temporarily detained under the provisions of subsection (2) longer than is reasonably necessary to effect the purposes of that subsection. Such temporary detention shall not extend beyond the place where it was first effected or the immediate vicinity thereof.

(4)   If at any time after the onset of the temporary detention authorized by subsection (2), probable cause for arrest of person shall appear, the person shall be arrested. If, after an inquiry into the circumstances which prompted the temporary detention, no

9

probable cause for the arrest of the person shall appear, the person shall be released.

36.     Fla. Stat. §856.021 is Florida's "Loitering and Prowling" statute:

(1)   It is unlawful for any person to loiter or prowl in a place, at a time or in a manner not usual for law-abiding individuals, under circumstances that warrant a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity.

(2)   Among the circumstances which may be considered in determining whether such alarm or immediate concern is warranted is the fact that the person takes flight upon appearance of a law enforcement officer, refuses to identify himself or herself, or manifestly endeavors to conceal himself or herself or any object. Unless flight by the person or other circumstance makes it impracticable, a law enforcement officer shall, prior to any arrest for an offense under this section, afford the person an opportunity to dispel any alarm or immediate concern which would otherwise be warranted by requesting the person to identify himself or herself and explain his or her presence and conduct. No person shall be convicted of an offense under this section if the law enforcement officer did not comply with this procedure or if it appears at trial that the explanation given by the person is true and, if believed by the officer at the time, would have dispelled the alarm or immediate concern.

37.     In *State v. Ecker*, 311 So.2d 104, 109 (Fla. 1975), the Florida Supreme Court construed Section 856.021, Florida Statutes, as requiring that " 'the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant' a finding that a breach of the peace is imminent or the public safety is threatened."

38.     In *Ecker* at 106, the elements of the offense which must be satisfied for conviction of loitering and prowling were set forth as:

(1) the defendant loitered or prowled in a place, at a time, or in a manner not usual for law-abiding individuals;
(2) such loitering and prowling were under circumstances that warranted a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity. This alarm is presumed under the statute if, when a law officer appears, the defendant flees, conceals himself, or refuses to identify himself. Prior to any arrest, the defendant must be afforded an opportunity to dispel any alarm or immediate concern by identifying himself and explaining his presence and conduct. If it appears at trial that the explanation is true and would have dispelled the alarm or immediate concern, then the defendant may not be convicted under this statute.

39.     In order to arrest a person for violation of the loitering and prowling statute, the arresting officer must have probable cause to believe that the offense has been committed. *Springfield v. State,* 481 So.2d 975 (Fla. 4th DCA 1986. To this end, in order to justify an arrest, "the police officer must be able to point to *specific and articulable facts,* which taken together with rational inferences from these facts, reasonably warrant" a finding that a breach of the peace is imminent or the public safety is threatened. *Ecker* at 109.

40.     When Defendant JACKSON detained Plaintiff, he did not have a reasonable articulable suspicion based on objective facts that Plaintiff had or was about to engage in criminal activity.

41.     At 12:40pm, dispatch advised Defendant JACKSON that the vehicle Plaintiff was in was registered to "Daniel J. Gilroy."

11

42.    At 12:44pm, Defendant JACKSON stated that he believed that Plaintiff was a private investigator.

43.    Defendant JACKSON confessed to another deputy his knowledge of, but utter disdain for the United Stated Constitution: "It's probably like some Fourth Amendment bullshit."

44.    The Nassau County Property Appraiser website allows for anyone with internet access to look up a piece of property by owner or address to determine the boundaries of that property.

45.    Defendant JACKSON failed to do any research whatsoever to determine the owner of the land that Plaintiff was parked on.

46.    Defendant JACKSON failed to do any research whatsoever to determine the property line boundaries for the JEA pump station.

47.    The Florida Department of Agriculture and Consumer Services website allows for anyone with internet access to look up a name to confirm if they have a private investigator license.

48.    At 1:22pm *Defendant JACKSON* stated "If my understanding is correct, he does have to identify, if we say hey are you acting as a private investigator, everything tells me that's what he is doing."

12

49.     At 1:25pm Defendant JACKSON confirmed that his sergeant stated that the registered owner of Plaintiff's vehicle (Daniel J. Gilroy) has a valid private investigator license.

50.     An objectively reasonable police officer at this point, and in preceding 50 minutes, would conclude that Plaintiff was engaged in a private investigation.

51.     At 1:36pm, Defendant JACKSON stated "If he would just show me a license, and a C license I would literally, we would literally get in our shit and leave."

52.     Defendant JACKSON's statement revealed that he along with the other NCSO Deputies, were in a contest between their ego and Plaintiff's Fourth Amendment rights and protections that Defendant JACKSON referred to as "bullshit".

53.     At 1:37pm, Defendant JACKSON stated "Right now I'm detaining him to identify him."

54.     It is unlawful to detain a person to identify them.

55.     JSO entered into the Memorandum of Agreement attached as Exhibit C with Defendant JEA on October 1, 2022.

56.     Paragraph 6 of the Memorandum of Agreement states in pertinent part:

The Detective assigned to JEA, pursuant to the Agreement, shall remain subject to the supervision and control of the JSO supervisory and command personnel at all times. JEA's Director of Security is responsible for development, implementation, and execution of JEA's security policies and operations, including the duties and responsibilities of the assigned Detective with regard to such policies and operations. The parties also agree that JEA security policies and procedures will be followed when the JEA policies and procedures do not conflict with JSO policies and procedures. In the event of a conflict, the Detective will follow JSO policies and procedures.

The parties agree that JEA shall be responsible for all aspects of the implementation of its security program and its compliance with applicable regulations. The JSO's responsibility is limited to the assignment of a Detective as set forth herein and the faithful performance of the law enforcement functions by that Detective.

57.     Detective B. Emerson of JSO was the Detective assigned to JEA on March 19, 2024.

58.     At all times material Detective B. Emerson acted on behalf of JSO and JEA.

59.     Paragraph 10 of the Memorandum of Agreement states "Each party shall be responsible for its own acts including, its officials, employees, agents or representatives. Nothing herein, is intended to waive or alter either party's sovereign immunity as provided by law."

14

60.    As such, Defendants COJ and JEA are both vicariously liable for the acts and omissions of Detective B. Emerson described herein.

61.    Without having any idea of where Plaintiff was parked, Detective B. Emerson told the Deputies that the area Plaintiff was parked on was owned by JEA.

62.    At 1:55pm *Defendant JACKSON* initiated the following exchange with Plaintiff:

| *Defendant JACKSON* | *Plaintiff* |
|---|---|
| If you would just give me a valid Florida ID card or some type of government ID, you will be set free. But until the point you do that, I will continue to detain you until the investigator from Florida Department of Agriculture shows up to verify your credentials, okay? Or to verify your identity. | |
| | But you knew I was a private investigator. |
| Well, I don't know that because you won't give me any type of government ID. | |
| | You suspected. |
| I suspected that. | |
| | Because you wouldn't unless you suspected. You suspected I was |

15

| | doing legitimate behavior. |
|---|---|
| Well, suspected, but I can't prove that because you want to identify yourself. | |
| | You suspected I was doing legitimate behavior. |
| So if you would just give me some type of government ID, you will be off here. I will trespass you from this JAA property, and then you'll be free to go. | |

63. Defendant JACKSON's actions and contempt for the Fourth Amendment are repugnant to the solemn oath that he took as a Florida law enforcement officer.

64. Defendant SCHMIDT attempted to bully Plaintiff into producing identification despite there being no lawful reason to do so.

65. At no time prior to Plaintiff's arrest was he given Miranda warnings.

66. At 2:01pm, Defendant SCHMIDT ordered the NCSO Deputies to extract Plaintiff from his vehicle. Plaintiff handed Defendant JACKSON his identification.

67. Deputies opened Plaintiff's car door, and Plaintiff peacefully surrendered when NCSO Deputies placed their hands on him.

16

68. Defendant JACKSON then placed handcuffs on Plaintiff even after he identified himself, all because Plaintiff would not forfeit his Fourth Amendment and Fifth Amendment rights to not identify himself.

69. Defendant SCHMIDT immediately began to search Plaintiff's vehicle. The search and seizure of Plaintiff's vehicle was unlawful because the underlying arrest was unlawful.

70. At 2:02pm, Defendant JACKSON stated "Alright Mr. Gilroy, you were provided multiple opportunities to identify yourself but your refused to do so, you are going to be arrested for trespassing after warning OK and resisting."

71. Not only was Plaintiff not trespassing on JEA property, but he was detained by Defendant JACKSON on Tract H of the property owned by HIDEAWAY HOMEOWNERS ASSOC INC. and could not leave even if he had been on JEA property.

72. In Florida, Plaintiff has the right to resist an officer who is making an unlawful arrest.

73. In Florida, you cannot be arrested for resisting due to a failure to identify yourself.

74. In Florida, you cannot be arrested for trespassing after warning due to a failure to identify yourself.

17

75. Defendant SCHMIDT's actions and contempt for the Fourth Amendment are repugnant to the solemn oath that he took as a Florida law enforcement officer.

76. Plaintiff regained his liberty on March 20, 2024 after he posted bond.

77. At all times material, the Deputies were acting in the course and scope of their employment with Defendant, NCSO as sworn law enforcement officers.

78. The Deputies, who were government actors, acting under the color of law, violated Plaintiff's constitutional rights under the Fourth Amendment to the United States Constitution, which are secured through the Fourteenth Amendment, to be free from unreasonable searches and seizures when they remained at the Residence after having been instructed to leave, and entered the Residence home without a warrant, probable cause, emergency, exigent circumstances, invitation, or consent.

79. The Deputies were government actors, acting under the color of law, violated Plaintiff's constitutional right to be free from unreasonable searches and seizures when they physically detained Plaintiff without a warrant or any probable cause to believe Plaintiff committed any crime or met the criteria for involuntary examination under Fla. Stat. § 394.463(1).

18

80. Claims that a police officer used excessive force are analyzed under the Fourth Amendment's "objective reasonableness" standard. *Salvato v. Miley*, 790 F.3d 1286, 1293 (11th Cir. 2015), citing *Graham v. Connor*, 490 U.S. 386, 388 (1989).

81. An objectively reasonable police officer would have known that (a) seizing Plaintiff, (b) using force against Plaintiff, (c) restricting Plaintiff's movement, and (d) causing Plaintiff's continued detention, would violate clearly established law.

82. The actions of the Deputies violated clearly established constitutional rights of which a reasonable person would have known, that is, an objectively reasonable officer would have known that detaining a person for the purpose of forcing them to identify themselves to law enforcement officers violated clearly established state and federal law and violated the Fourth Amendment and Fifth Amendment as a matter of law.

83. The actions of the Deputies violated clearly established constitutional rights of which a reasonable person would have known, that is, an objectively reasonable officer would have known that physically restraining a person without probable cause or legal authority, violated clearly established state and federal law and violated the Fourth Amendment as a matter of law.

19

84. Plaintiff's constitutional rights described hereinabove above were clearly established as a matter of law at the time the restraint and deprivation occurred.

85. As such, the Deputies are not entitled to qualified immunity and they violated the clearly established law.

86. This deprivation under color of state law is actionable under and may be redressed by 42 U.S.C. §1983.

87. As a direct and proximate result of the Defendants' unlawful conduct described herein, Plaintiff suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, embarrassment, loss of reputation, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and aggravation of a previously existing condition. The losses suffered by Plaintiff are either permanent or continuing and Plaintiff will suffer the losses in the future.

88. All conditions precedent to this cause of action have occurred, been performed, or have been waived, including but not limited to notice pursuant to Fla. Stat. § 768.28.

89.     Plaintiff has retained the services of the undersigned attorneys and is required to pay a reasonable fee for their services.

### IV.     CLAIMS FOR RELIEF

### COUNT I – False Imprisonment
### Defendant BILL LEEPER, in his official capacity as Sheriff of Nassau County

Plaintiff, DANIEL JOHN GILROY, realleges those allegations contained within paragraphs 1-89 above and incorporates them herein by this reference.

90.     On March 19, 2024, Defendant, ROBERT JACKSON while acting in the course and scope of their employment with NCSO did unlawfully falsely imprison Plaintiff.

91.     BILL LEEPER, in his official capacity as Sheriff of Nassau County is vicariously liable for the false imprisonment of Plaintiff by Defendant, ROBERT JACKSON and the other Deputies that detained and arrested Plaintiff.

92.     Plaintiff had not committed a crime.

93.     Plaintiff's restraint was unreasonable and unwarranted under the circumstances because the Deputies did not have reasonable suspicion or probable cause to detain Plaintiff.

94.     The Deputies negligently deprived Plaintiff of Plaintiff's liberty rights under the Fourth Amendment to the United States Constitution, which are

21

secured through the Fourteenth Amendment, when they physically detained Plaintiff without a warrant or any probable cause to believe Plaintiff committed any crime.

**WHEREFORE**, Plaintiff, DANIEL JOHN GILROY individually respectfully requests that this Court enter judgment against Defendant BILL LEEPER, in his official capacity as Sheriff of Nassau County in Plaintiff's favor as follows:

(a)    award Plaintiff damages;
(b)    award Plaintiff costs of this action; and
(c)    all other relief which this Court deems just and proper.

## COUNT II – Battery
## Defendant BILL LEEPER, in his official capacity as Sheriff of Nassau County

Plaintiff, DANIEL JOHN GILROY, realleges those allegations contained within paragraphs 1-89 above and incorporates them herein by this reference.

95.    On March 19, 2024, Defendant, ROBERT JACKSON and the Deputies while acting in the course and scope of their employment with NCSO did commit a battery on Plaintiff when they touched him and handcuffed him.

96.    BILL LEEPER, in his official capacity as Sheriff of Nassau County is vicariously liable for the battery of Plaintiff by Defendant, ROBERT JACKSON and the other Deputies that arrested Plaintiff.

22

**WHEREFORE**, Plaintiff, DANIEL JOHN GILROY individually respectfully requests that this Court enter judgment against Defendant BILL LEEPER, in his official capacity as Sheriff of Nassau County in Plaintiff's favor as follows, in Plaintiff's favor as follows:

(a)   award Plaintiff damages;
(b)   award Plaintiff costs of this action; and
(c)   all other relief which this Court deems just and proper.

## COUNT III – Violation of Civil Rights Pursuant to 42 U.S.C. § 1983
## Unlawful Detainment and False Arrest of Plaintiff's person in violation of the Fourth and Fourteenth Amendments
## ROBERT JACKSON

Plaintiff, DANIEL JOHN GILROY, realleges those allegations contained within paragraphs 1-89 above and incorporates them herein by this reference.

97.   This is a civil action pursuant to 42 U.S.C. §1983 & §1988 seeking damages against Defendant, ROBERT JACKSON, for committing acts, under color of law, with the intent and for the purpose of depriving Plaintiff of rights secured under the Constitution, laws of the United States, and laws of the State of Florida, and for refusing and/or neglecting to prevent such deprivations and denials to Plaintiff.

98.   Defendant, ROBERT JACKSON recklessly, maliciously, and under color of state law deprived Plaintiff of Plaintiff's liberty rights under the Fourth Amendment to the United States Constitution, which are secured through the

23

Fourteenth Amendment, when he detained and arrested Plaintiff without reasonable articulable suspicion, probable cause, warrant, emergency, exigent circumstances, invitation, or consent.

99.    In depriving the Plaintiff of these rights, Defendant, ROBERT JACKSON committed these unlawful violations under color of state law in bad faith and with malicious purpose in reckless, wanton, and willful disregard of Plaintiff's human, safety, and property rights.

**WHEREFORE**, Plaintiff, DANIEL JOHN GILROY individually respectfully requests that this Court enter judgment against Defendant, ROBERT JACKSON, in Plaintiff's favor as follows:

(a)    award Plaintiff damages;
(b)    award Plaintiff punitive damages;
(c)    award Plaintiff reasonable attorneys' fees pursuant to 42 U.S.C. §1988;
(d)    award Plaintiff costs of this action pursuant to 42 U.S.C. §1988;
(e)    prejudgment interest; and
(f)    all other relief which this Court deems just and proper.

## COUNT IV – Violation of Civil Rights Pursuant to 42 U.S.C. § 1983
## False Arrest in violation of the Fourth and Fourteenth Amendments
## BRANDON L SCHMIDT

Plaintiff, DANIEL JOHN GILROY, realleges those allegations contained within paragraphs 1-89 above and incorporates them herein by this reference.

24

100. This is a civil action pursuant to 42 U.S.C. §1983 & §1988 seeking damages against Defendant, BRANDON L SCHMIDT, for committing acts, under color of law, with the intent and for the purpose of depriving Plaintiff of rights secured under the Constitution, laws of the United States, and laws of the State of Florida, and for refusing and/or neglecting to prevent such deprivations and denials to Plaintiff.

101. Defendant, BRANDON L SCHMIDT recklessly, maliciously, and under color of state law deprived Plaintiff of Plaintiff's liberty rights under the Fourth Amendment to the United States Constitution, which are secured through the Fourteenth Amendment, when he commanded the Deputies to include Defendant JACKSON to physically detain Plaintiff without a warrant, probable cause, emergency, exigent circumstances, invitation, or consent.

102. In depriving the Plaintiff of these rights, Defendant, BRANDON L SCHMIDT committed these unlawful violations under color of state law in bad faith and with malicious purpose in reckless, wanton, and willful disregard of Plaintiff's human, safety, and property rights.

**WHEREFORE**, Plaintiff, DANIEL JOHN GILROY individually respectfully requests that this Court enter judgment against Defendant, BRANDON L SCHMIDT, in Plaintiff's favor as follows:

25

(a)    award Plaintiff damages;

(b)    award Plaintiff punitive damages;

(c)    award Plaintiff reasonable attorneys' fees pursuant to 42 U.S.C. §1988;

(d)    award Plaintiff costs of this action pursuant to 42 U.S.C. §1988;

(e)    prejudgment interest; and

(f)    all other relief which this Court deems just and proper.

## COUNT V – Violation of Civil Rights Pursuant to 42 U.S.C. § 1983
## Unlawful Search of Vehicle in violation of the Fourth and Fourteenth Amendments
## BRANDON L SCHMIDT

Plaintiff, DANIEL JOHN GILROY, realleges those allegations contained within paragraphs 1-89 above and incorporates them herein by this reference.

103.   This is a civil action pursuant to 42 U.S.C. §1983 & §1988 seeking damages against Defendant, BRANDON L SCHMIDT, for committing acts, under color of law, with the intent and for the purpose of depriving Plaintiff of rights secured under the Constitution, laws of the United States, and laws of the State of Florida, and for refusing and/or neglecting to prevent such deprivations and denials to Plaintiff.

104.   Defendant, BRANDON L SCHMIDT recklessly, maliciously, and under color of state law deprived Plaintiff of Plaintiff's right to be free of unreasonable searches of his vehicle under the Fourth Amendment to the United States Constitution, which are secured through the Fourteenth Amendment, when he searched Plaintiff's vehicle after Plaintiff's unlawful arrest.

26

105.   In depriving the Plaintiff of these rights, Defendant, BRANDON L SCHMIDT committed these unlawful violations under color of state law in bad faith and with malicious purpose in reckless, wanton, and willful disregard of Plaintiff's human, safety, and property rights.

**WHEREFORE**, Plaintiff, DANIEL JOHN GILROY individually respectfully requests that this Court enter judgment against Defendant, BRANDON L SCHMIDT, in Plaintiff's favor as follows:

(a)   award Plaintiff damages;
(b)   award Plaintiff punitive damages;
(c)   award Plaintiff reasonable attorneys' fees pursuant to 42 U.S.C. §1988;
(d)   award Plaintiff costs of this action pursuant to 42 U.S.C. §1988;
(e)   prejudgment interest; and
(f)   all other relief which this Court deems just and proper.

### COUNT VI – Negligence
### CITY OF JACKSONVILLE

Plaintiff, DANIEL JOHN GILROY, realleges those allegations contained within paragraphs 1-89 above and incorporates them herein by this reference.

106.   Detective B. Emerson while acting in the course and scope of their employment as the JSO Detective assigned to JEA, had a duty to Plaintiff to obtain accurate information from the Deputies as to where Plaintiff was actually located, and to provide accurate information to the Deputies that the boundaries

of Tract D, the JEA Pump station are the area that is fenced in and denoted by a no trespassing sign.

107.    Detective B. Emerson breached the aforementioned duty by failing to obtain accurate information from the Deputies as to where Plaintiff was actually located, and to provide accurate information to the Deputies that the boundaries of Tract D, the JEA Pump station are the area that is fenced in and denoted by a no trespassing sign.

108.    As a result of the aforementioned negligence, Plaintiff was unlawfully arrested.

**WHEREFORE**, Plaintiff, DANIEL JOHN GILROY individually respectfully requests that this Court enter judgment against Defendant CITY OF JACKSONVILLE in Plaintiff's favor as follows:

(a)    award Plaintiff damages;
(b)    award Plaintiff costs of this action; and
(c)    all other relief which this Court deems just and proper.

### COUNT VII – Negligence
### JACKSONVILLE ELECTRIC AUTHORITY

Plaintiff, DANIEL JOHN GILROY, realleges those allegations contained within paragraphs 1-89 above and incorporates them herein by this reference.

28

109.   Detective B. Emerson while acting in the course and scope of their employment as the JSO Detective assigned to JEA, had a duty to Plaintiff to obtain accurate information from the Deputies as to where Plaintiff was actually located, and to provide accurate information to the Deputies that the boundaries of Tract D, the JEA Pump station are the area that is fenced in and denoted by a no trespassing sign.

110.   Detective B. Emerson breached the aforementioned duty by failing to obtain accurate information from the Deputies as to where Plaintiff was actually located, and to provide accurate information to the Deputies that the boundaries of Tract D, the JEA Pump station are the area that is fenced in and denoted by a no trespassing sign.

111.   As a result of the aforementioned negligence, Plaintiff was unlawfully arrested.

**WHEREFORE**, Plaintiff, DANIEL JOHN GILROY individually respectfully requests that this Court enter judgment against Defendant JACKSONVILLE ELECTRIC AUTHORITY in Plaintiff's favor as follows:

(d)   award Plaintiff damages;
(e)   award Plaintiff costs of this action; and
(f)   all other relief which this Court deems just and proper.

<u>DEMAND FOR JURY TRIAL</u>

29

Plaintiff DANIEL JOHN GILROY demands trial by jury on all counts and issues so triable herein.

Respectfully submitted March 10, 2026

**THOELE|DRACH**

BY: _____

**Justin Seth Drach, Esq.**
Florida Bar No. 103016
Email: justin@thoeledrach.com
**Amanda Marie Thoele, Esq.**
Florida Bar No. 75118
Email: amanda@thoeledrach.com
3744 DuPont Station Ct S
Jacksonville, FL 32217
Telephone: (904) 600-4384
Facsimile: (904) 306-1355
*Attorneys for Plaintiff*